Greyson Goody (SBN 292527 )
Email: greyson@goodylawgroup.com
GOODY LAW GROUP
52 Malaga Cove Plaza, Suite 305
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983

Francesca M. Witzburg, Esq. (pro hac vice application forthcoming)
Email: fw@esca.legal
Kalpana Nagampalli, Esq. (pro hac vice application forthcoming)
Email: kalpana@esca.legal
Madison Marino, Esq. (pro hac vice application forthcoming)
Email: madison@esca.legal
ESCA LEGAL LLC
55 Broadway, 3rd Floor
New York, NY 10006
Telephone: (917) 831-4115

*Attorneys for Plaintiff Hive Market Holdings LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

HIVE MARKET HOLDINGS LLC, a Delaware Limited Liability Company,

Plaintiff,

v.

CINNIES LLC, a California Limited Liability Company,

Defendant.

Case No. ______________________

**COMPLAINT FOR:**

1. Federal Trademark Infringement (15 U.S.C. § 1125(a)(1)(A));
2. False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a)(1)(A));
3. Federal Trademark Infringement of a Registered Mark (15 U.S.C. § 1114(1));
4. Common Law Trademark Infringement (California Common Law);
5. Common Law Unfair Competition (California Common Law); and
6. Declaratory Judgment (28 U.S.C. §§ 2201–2202)

**DEMAND FOR JURY TRIAL**

Plaintiff Hive Market Holdings LLC ("Plaintiff" or "Hive Holdings"), by and through its undersigned counsel, alleges against Defendant Cinnies LLC ("Defendant") as follows:

## NATURE OF THE ACTION

1. This is a case about a junior user who was warned, said nothing, and scaled its infringement anyway.

2. Plaintiff devised and began using the CINNIES trademark ("CINNIES Mark") commercially in connection with bakery goods, bakery products, and frozen dough in December 2022 — more than two years before Defendant's infringing use for its business. Through continuous and substantial use, Plaintiff has built valuable goodwill in the CINNIES Mark and is its senior user and rightful owner. Plaintiff also owns United States Trademark Registration No. 7635253 for the mark CINNY ROLLS ("CINNY ROLLS Mark"), and common law rights in the mark CINNY ("CINNY Mark"), each of which Plaintiff has used for the same goods since before Defendant adopted the Infringing Designation, as defined below.

3. Upon information and belief, Defendant began using CINNIES as a brand name ("Infringing Designation") in or around March 2025, long after Plaintiff had established rights in the CINNIES Mark.

4. On June 9, 2025, Plaintiff contacted Defendant directly and, in writing, identified Plaintiff's prior rights in the CINNIES Mark and Plaintiff's date of first use, and asked to resolve the matter between the parties without escalation or litigation. After receiving no response for two weeks, Plaintiff followed up on June 23, 2025. Defendant never responded, never ceased or narrowed its use, and instead expanded its use over the

months that followed — from launching new flavors and collaborations with other brands and influencers to opening additional locations with more permanence in the market.

5. Defendant then went further. On May 8, 2026, Defendant filed a Notice of Opposition with the Trademark Trial and Appeal Board (Opposition No. 91307199) against Plaintiff's application to register its own senior mark (U.S. Serial No. 99065113), contending that Plaintiff's mark fails to function as a trademark and is merely descriptive. Defendant thus asks a federal tribunal to declare that the very designation on which it has built its business is incapable of identifying a single source.

6. Plaintiff seeks relief for ongoing infringement and escalating likelihood of confusion in the marketplace and Defendant's filing of Opposition No. 91307199 is solely evidence of Defendant's willfulness, knowledge of Plaintiff and of Plaintiff's rights, of the existence of an actual and justiciable controversy between the parties, and of the inconsistency between Defendant's litigation contentions and Defendant's conduct in the marketplace.

7. Defendant's infringement is not inadvertent. It is knowing, deliberate, and willful, and it has continued without interruption for more than a year after Defendant received actual notice of Plaintiff's rights. Plaintiff brings this action to stop it and to recover the damages and profits that Defendant's willful conduct has produced.

## THE PARTIES

8. Hive Market Holdings LLC is a limited liability company organized and existing under the laws of the State of Delaware. Hive Holdings is the intellectual property holding company for The Hive group of companies (collectively, "The Hive") and is the

owner of the CINNIES Mark, the CINNY Mark, and the CINNY ROLLS Mark, including as defined below.

9. Hive Market Jersey City LLC ("Hive Jersey City") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 602 Madison Street, Hoboken NJ 07030. Hive Jersey City is wholly owned by Hive Holdings and operates The Hive's Jersey City coffee and bakeshop location at 615 Jersey Avenue, Jersey City, NJ 07302.

10. Hive Market Hoboken LLC ("Hive Hoboken") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 602 Madison Street, Hoboken NJ 07030. Hive Hoboken is wholly owned by Hive Holdings and operates The Hive's Hoboken coffee and bakeshop location at 1000 Park Avenue, Hoboken, NJ 07030.

11. Hive Hoboken was formerly named The Hive Market LLC, a New Jersey limited liability company. On or about March 2, 2026, The Hive Market LLC converted into Hive Hoboken by filing a Certificate of Conversion to Limited Liability Company and a Certificate of Formation with the Delaware Secretary of State pursuant to 6 Del. C. § 18-214.

12. On August 27, 2026, The Hive Market LLC, now known as Hive Hoboken, assigned to Plaintiff all right, title, and interest in and to the CINNIES Mark, the CINNY Mark, and the CINNY ROLLS Mark, together with the goodwill of the business symbolized by those marks, and all applications and registrations relating to those marks, including the CINNIES Application and the CINNY ROLLS Registration, each as defined below.

13. Plaintiff has licensed to Hive Hoboken, to Hive Jersey City, and to the other operating entities within The Hive group of companies, the right to use the CINNIES Mark, the CINNY Mark, and the CINNY ROLLS Mark, subject to Plaintiff's control over the nature and quality of the goods offered under those marks. All such use inures to the benefit of Plaintiff pursuant to 15 U.S.C. § 1055.

14. Except where otherwise indicated, references in this Complaint to Plaintiff's adoption, use, sale, promotion, and offering of goods under the CINNIES Mark, the CINNY Mark, and the CINNY ROLLS Mark include such acts by Hive Hoboken, by Hive Jersey City, by The Hive Market LLC, and by Plaintiff's other predecessors-in-interest and licensed affiliates.

15. Upon information and belief, Defendant Cinnies LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 3021 Earlmar Drive Los Angeles, CA 90064.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over Plaintiff's federal claim under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). Federal registration is not a prerequisite to relief under 15 U.S.C. § 1125(a).

17. This Court has supplemental jurisdiction over Plaintiff's state statutory and common law claims under 28 U.S.C. §§ 1338(b) and 1367(a), because those claims are so related to the federal claim that they form part of the same case or controversy.

18. This Court has personal jurisdiction over Defendant because Defendant is a California limited liability company with its principal place of business in this District, and is therefore at home in California.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(1). Defendant is subject to this Court's personal jurisdiction with respect to this action and is therefore deemed to reside in this District under 28 U.S.C. § 1391(c)(2). Venue is also proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including Defendant's operation of its business in Los Angeles County, its sales of its goods, and its advertising and promotion of the Infringing Designation from and within this District.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Trademark Rights and Continuous Use of the CINNIES Mark

20. Plaintiff devised the CINNIES Mark in December 2022 and first used it in interstate commerce in connection with bakery products, bakery goods, and frozen dough on or about December 12, 2022.

21. Plaintiff's use of the CINNIES Mark in interstate commerce has been continuous and uninterrupted from December 12, 2022 through the present.

22. Plaintiff offers goods under the CINNIES Mark through (i) its physical retail locations in the New Jersey/New York metropolitan area, including its existing Hoboken and Jersey City bakeshops and its upcoming Manhattan bakeshop, set to open in Fall 2026, and pop-up locations or events, (ii) its website at www.thehivemarket.com, (iii) its Instagram at @hellofromthehive, and (iv) on Goldbelly e-commerce platform at https://www.goldbelly.com/restaurants/the-hive ("Hive Channels"). Representative examples of the CINNIES Mark as used in the Hive Channels are attached as **Exhibit A**.

23. Plaintiff has sold and shipped goods bearing the CINNIES Mark to consumers throughout the United States through the Hive Channels, including through

nationwide shipping via Goldbelly. Since October 2024, Plaintiff has shipped goods bearing the CINNIES Mark to consumers in all 50 states, as well as Canada.

24. Plaintiff's use of the CINNIES Mark has expanded to California since at least as early as January 2025, more than one year before Defendant's first use of the Infringing Designation.

25. Since December 2022, Plaintiff has generated significant sales of goods under the CINNIES Mark, including approximately $18,000 in California since 2025.

26. Plaintiff has devoted substantial resources to promoting the CINNIES Mark, including through social media, collaborations with brands and public figures, and in-store and event marketing. Plaintiff's goods sold under the CINNIES Mark have also been the subject of substantial unsolicited media coverage, as alleged below.

27. Plaintiff has expended approximately $8,000 per year advertising and promoting the CINNIES Mark, including through digital and print media, its website at www.thehivemarket.com, its social media channels, unsolicited and solicited coverage in news outlets and magazines, and collaborations with other brands, social media influencers, and content creators.

28. Plaintiff's use of the CINNIES Mark has generated significant unsolicited media coverage in *Hoboken Girl*, *PIX 11 News*, the *Drew Barrymore Show*, *NJ Monthly*, *PBS HerStory*, the *Food Network*, and *Delish*.

29. Plaintiff has collaborated with well-known brands such as *Ulta*, *Snif*, *Ergobaby*, *Twix*, *Butterfinger*, *PopUp Bagels*, *Abercrombie & Fitch*, and *California Naturals*, a Los Angeles-based business, among others.

30. The CINNIES Mark used in connection with Plaintiff's goods is well-known and highly regarded by the relevant consuming public.

31. Consumers frequently line up outside of The Hive physical retail locations before they open to secure the fresh baked goods sold under the CINNIES Mark. Customers wait for up to or over an hour on Fridays, Saturdays, and Sundays. The Hive bakes around 200-300 cinnamon rolls each day and typically sell out within two hours.

32. Plaintiff owns all right, title, and interest in and to the CINNIES Mark, together with the goodwill of the business symbolized by it. Plaintiff has never assigned, licensed, or otherwise transferred any right in the CINNIES Mark to Defendant or to any predecessor of Defendant.

**B. The CINNIES Mark Is Distinctive and Protectable**

33. Plaintiff coined the term CINNIES. The term was invented by Plaintiff's founders and was not adopted from any existing industry term or third-party usage known to Plaintiff at the time of adoption.

34. The term CINNIES is not a word in the English language. It does not appear in standard English dictionaries and has no recognized dictionary meaning.

35. The CINNIES Mark is therefore inherently distinctive as applied to Plaintiff's goods. CINNIES is suggestive of Plaintiff's goods as it does not immediately convey any ingredient, characteristic, quality, function, or purpose of the goods, and a consumer must exercise imagination and engage in a multi-step reasoning process to move from the coined term CINNIES to the goods Plaintiff sells under it.

36. In the alternative, and if the CINNIES Mark is found to be other than inherently distinctive, the CINNIES Mark has acquired distinctiveness and secondary

meaning among the relevant consuming public through Plaintiff's continuous and substantially exclusive use since December 12, 2022, Plaintiff's sales and promotion of the CINNIES Mark through the Hive Channels, the substantial unsolicited media coverage of Plaintiff's goods sold under the CINNIES Mark, and Defendant's intentional copying.

37. The CINNIES Mark functions as a trademark. Plaintiff uses the mark on its packaging, signage, menus, and product listings to identify the source of its goods, and consumers request Plaintiff's goods by the CINNIES Mark. Consumers encountering the CINNIES Mark perceive it as identifying Plaintiff as the source of the goods offered under it.

38. On March 3, 2025, Plaintiff filed United States Trademark Application Serial No. 99065113 seeking registration of the CINNIES Mark for "Bakery goods; Bakery products; Frozen dough" in International Class 30 ("CINNIES Application"). The CINNIES Application was filed under Plaintiff's former name, The Hive Market LLC, and remains pending. Plaintiff is and has at all times been the owner of the CINNIES Application.

39. The United States Patent and Trademark Office examined the CINNIES Application and did not refuse registration on the ground that the mark is merely descriptive under 15 U.S.C. § 1052(e)(1), did not refuse registration on the ground that the mark fails to function as a trademark, and did not require any disclaimer. The Examining Attorney approved the CINNIES Mark for publication on the Principal Register without any claim of acquired distinctiveness under 15 U.S.C. § 1052(f), and the CINNIES Mark was published in the Official Gazette on November 11, 2025.

40. Defendant's own use of the identical wording as a trademark and as a trade name, as alleged below, is further evidence that the CINNIES Mark is capable of functioning, and does function, as an indicator of a single commercial source.

**C. Plaintiff's CINNY ROLLS Registration and Related CINNY Mark**

41. Plaintiff owns United States Trademark Registration No. 7635253 for the CINNY ROLLS Mark, registered on the Principal Register on December 31, 2024, for "bakery goods; bakery products" in International Class 30 (the "CINNY ROLLS Registration"). A true and correct copy of the registration certificate is attached as **Exhibit B**.

42. The application that matured into the CINNY ROLLS Registration was filed on April 7, 2023, and claims first use in commerce at least as early as September 30, 2022. Both dates precede Defendant's adoption and first use of the Infringing Designation.

43. The CINNY ROLLS Registration is valid, subsisting, and in full force and effect, and constitutes prima facie evidence of the validity of the mark, of Plaintiff's ownership of the mark, and of Plaintiff's exclusive right to use the mark in commerce in connection with the goods identified therein, pursuant to 15 U.S.C. §§ 1057(b) and 1115(a).

44. By operation of 15 U.S.C. § 1072, the CINNY ROLLS Registration has constituted constructive notice of Plaintiff's claim of ownership of the CINNY ROLLS Mark since December 31, 2024. Defendant's adoption and first use of the Infringing Designation occurred after that date.

45. By operation of 15 U.S.C. § 1057(c), the filing of the application that matured into the CINNY ROLLS Registration constitutes constructive use of the CINNY

ROLLS Mark nationwide, conferring on Plaintiff a right of priority as of April 7, 2023 — nearly two years before Defendant adopted the Infringing Designation.

46. Plaintiff also owns common law rights in the CINNY Mark, standing alone, for bakery goods. Plaintiff has used the CINNY Mark in commerce continuously since at least as early as June 2023, including on its website, on its menus, on its packaging, and in its advertising and social media. Plaintiff's use of the CINNY Mark predates Defendant's adoption and first use of the Infringing Designation.

47. Defendant's use of CINNIE is phonetically identical to CINNY and differs from it only in spelling. Defendant applies CINNIE and CINNIES to cinnamon rolls, which are bakery goods and bakery products within the identification of goods of the CINNY ROLLS Registration.

48. Plaintiff uses the CINNIES Mark, the CINNY ROLLS Mark, and the CINNY Mark together and in relation to one another, in connection with the same goods, through the same channels of trade, and in the same advertising and promotional materials. Each of those marks contributes to, and shares in, a single body of goodwill owned by Plaintiff.

49. CINNIES, CINNY ROLLS, and CINNY share a common formative and a common commercial impression. Plaintiff has used and promoted those marks together such that the relevant consuming public has come to recognize the common formative as identifying goods originating from a single source.

50. In the alternative, CINNIES, CINNY ROLLS, and CINNY constitute a family of marks owned by Plaintiff. Defendant's use of the Infringing Designation is likely

to cause consumers to believe, incorrectly, that Defendant's goods are a further member of, or are affiliated with, that family.

**D. Defendant's Later Adoption of the Infringing Designation**

51. Upon information and belief, Defendant began using the Infringing Designation as the name of its brand/business in or around March 2025, more than two years after Plaintiff's first use of the CINNIES Mark.

52. Upon information and belief, Defendant or its predecessor registered the domain name cinnies.co in or about February 2025, published its first public promotion of the Infringing Designation on or about March 2, 2025, and made no bona fide use of the Infringing Designation in commerce before that date. Defendant Cinnies LLC was not organized under the laws of the State of California until April 26, 2025. Each of those dates postdates Plaintiff's first use of the CINNIES Mark by more than two years.

53. Upon information and belief, Defendant is a cinnamon roll business founded by Kiki Myers that began operating in or around 2025 as a pop-up, selling cinnamon rolls under the Infringing Designation at weekend farmers' markets in and around Los Angeles, including in Marina del Rey, Playa Vista, Brentwood, Melrose, and Mar Vista.

54. Upon information and belief, Defendant was aware, or should have been aware, of Plaintiff and of Plaintiff's use of the CINNIES Mark at the time Defendant adopted the Infringing Designation. Before Defendant's infringing use, Plaintiff's goods sold under the CINNIES Mark had been the subject of substantial unsolicited national media coverage, were shipped nationwide through Goldbelly, and were promoted through

a widely followed social media presence on the same online channels in which Defendant later launched the Infringing Designation.

55. Defendant uses the Infringing Designation in connection with cinnamon rolls and retail store services, which are identical to, or closely related to, the goods Plaintiff offers under the CINNIES Mark. Representative examples of Defendant's use are attached as **Exhibit C**.

56. Defendant's use of the Infringing Designation for retail bakery store services is closely related to Plaintiff's goods, because those services consist of the sale of the very goods Plaintiff sells under the CINNIES Mark. Consumers encountering retail bakery services offered under the Infringing Designation are likely to believe that those services are offered by, sponsored by, or affiliated with Plaintiff.

57. Defendant uses the Infringing Designation as a trademark and as a trade name. Defendant is organized under the corporate name Cinnies LLC and trades as "Cinnies." Defendant operates the Instagram account @eatcinnies, the profile of which identifies the account as "cinnies • LA • ooey, gooey handmade cinnamon rolls"; operates the TikTok account @eatcinniess; uses the domain name cinnies.co and the email address hello@cinnies.co; and displays the Infringing Designation on its signage, menu boards, packaging, and promotional materials. **Exhibit C.**

58. Defendant uses the singular form "CINNIE" to refer to an individual cinnamon roll and the plural form "CINNIES" to refer to more than one cinnamon roll. **Exhibit C.**

59. Third parties, including consumers and food media, use the Infringing Designation as Defendant's brand name.

60. Defendant promotes the Infringing Designation through Instagram and TikTok accounts that are publicly accessible throughout the United States and that reach consumers nationwide, including consumers in California and consumers in the New York and New Jersey metropolitan region in which Plaintiff maintains its retail locations.

61. The Infringing Designation is identical to Plaintiff's CINNIES Mark in appearance, sound, connotation, and overall commercial impression.

62. Defendant's use of "CINNIE" is identical to Plaintiff's CINNY Mark and the dominant portion of the CINNY ROLLS Mark in appearance, sound, connotation, and overall commercial impression.

63. Defendant markets its goods to the same or overlapping classes of consumers through the same or overlapping trade channels as Plaintiff.

64. The parties market through overlapping trade channels. Both parties sell cinnamon rolls directly to consumers at retail locations and at pop-up and market stalls, both promote their goods principally through Instagram and TikTok, and both market their goods through co-branded collaborations with consumer brands, restaurants, celebrities, and influencers.

65. Defendant's use of the Infringing Designation is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, or approval of Defendant's goods and services.

66. The likelihood of confusion is heightened by Defendant's recent co-branded collaboration with Fillings NYC—a New York City-based baked goods company. **Exhibit C.**

67. Defendant's recent partnership and connection to a New York City-based brand further encroaches, and significantly impacts and harms, Plaintiff's long-established rights in the CINNIES Mark.

68. Consumers encountering the co-branded cinnamon rolls and their associated promotional content are likely to believe that the Infringing Designation identifies Plaintiff, or that Plaintiff has authorized, sponsored, or participated in the collaboration. Brand collaborations in this industry commonly signal an authorized commercial relationship between the collaborating brands, and consumers are accustomed to understanding them that way.

**E. Plaintiff's Notice to Defendant and Defendant's Non-Response**

69. On June 9, 2025, Plaintiff contacted Defendant directly in writing. Plaintiff identified itself as the owner of the CINNIES Mark, stated that Plaintiff had used the mark continuously since December 2022, notified Defendant of the CINNIES Application, and advised Defendant that Plaintiff needed to protect those rights. Plaintiff asked Defendant to communicate with Plaintiff to resolve the matter between them rather than through counsel in an effort to resolve the matter amicably. True and correct copies of the communications between Plaintiff and Defendant are attached as **Exhibit E**.

70. Upon information and belief, Defendant received Plaintiff's June 9, 2025 communication. Defendant did not respond.

71. On June 23, 2025, Plaintiff followed up with Defendant a second time. Defendant did not respond to that communication either. **Exhibit E.**

72. At no time following Plaintiff's notice has Defendant ceased, limited, or modified its use of the Infringing Designation.

73. Since June 9, 2025, Defendant has had actual knowledge of Plaintiff's prior rights in the CINNIES Mark. Every act of infringement Defendant has committed since that date has been committed with that knowledge.

**F. Defendant's Expansion of Its Infringing Use After Notice**

74. Rather than cease its infringing use upon notice, Defendant has substantially expanded it. Upon information and belief, since June 9, 2025, Defendant has:

(a) collaborated with nationally-recognized brands such as the University of California, Los Angelesand La La Land;

(b) collaborated with well-known celebrities and influencers such as Phil Rosenthal and Tim Chung;

(c) partnered with a New York City-based business to co-promote a cinnamon roll collaboration;

(d) become the resident cinnamon roll supplier for the Los Angeles restaurant Max & Helen's, extending the Infringing Designation into third-party retail channels; and

(e) on or about June 4, 2026, opened a retail stall under the Infringing Designation at Grand Central Market, 317 S. Broadway, Los Angeles, California — a landmark public market that receives approximately two million visitors annually.

See **Exhibit C.**

75. Defendant's use of the Infringing Designation has changed in kind, and not merely in degree. Defendant previously presented its business to the public as a weekend pop-up at farmer's markets in the Los Angeles area. Defendant now operates from a

permanent retail location in a major public market, supplies a third-party restaurant, and markets the Infringing Designation to a substantially larger and materially different consumer audience.

76. Each of these changes occurred after Defendant received actual notice of Plaintiff's prior rights. Plaintiff brings this action promptly upon Defendant's transition to permanent operations and its expansion of the Infringing Designation into new channels and audiences.

77. Defendant's expansion has materially increased both the likelihood and the incidence of consumer confusion and has correspondingly increased the harm to Plaintiff's goodwill and reputation.

78. Defendant's expansion has been accompanied by regional and national press coverage of Defendant under the Infringing Designation, including coverage by Eater LA and The Infatuation. That coverage has further embedded the Infringing Designation in the marketplace for cinnamon rolls and has correspondingly increased the likelihood and incidence of consumer confusion. **Exhibit D.**

79. Defendant's decision to scale its infringing use after receiving actual notice of Plaintiff's senior rights demonstrates that its infringement is knowing, deliberate, and willful.

**G. Defendant's Trademark Trial and Appeal Board Opposition**

80. On May 8, 2026, Defendant filed a Notice of Opposition against Plaintiff's CINNIES Application, commencing Opposition No. 91307199 ("Opposition") before the Trademark Trial and Appeal Board. The Opposition remains pending before the Board.

81. Defendant's Opposition further confirms that Defendant is aware of Plaintiff, aware of Plaintiff's use of the CINNIES Mark, and aware that the parties' respective designations are confusingly similar.

**H. Defendant's Own Use of CINNIES Is Trademark Use and Is Irreconcilable With the Opposition**

82. In the Opposition, Defendant contends that CINNIES is merely descriptive of Plaintiff's goods within the meaning of 15 U.S.C. § 1052(e)(1); that it fails to function as a trademark within the meaning of Sections 1, 2, and 45 of the Lanham Act, 15 U.S.C. §§ 1051, 1052, and 1127; that it is a common term widely used in the baking industry; that consumers are accustomed to encountering it used by many different companies in a non-trademark and informational capacity; and that it therefore cannot identify a single commercial source.

83. Defendant's conduct in the marketplace is irreconcilable with each of those contentions. Defendant has organized a limited liability company under the name Cinnies LLC, adopted the Infringing Designation as the name of its business, built its entire consumer-facing identity around it, and continues to invest in consumer recognition of it as an indicator of a single source — Defendant.

84. Each ground Defendant asserts in the Opposition, if credited, would apply with equal force to Defendant's own use of the Infringing Designation and would defeat any rights Defendant claims in it. Defendant has nonetheless continued and expanded that use.

85. Defendant's conduct in the marketplace, rather than the positions it advances in litigation, reflects Defendant's own understanding that the wording CINNIES

identifies a single commercial source. That conduct is evidence that the CINNIES Mark is capable of functioning, and does function, as a source identifier for the goods at issue.

86. For the avoidance of doubt, Plaintiff does not seek relief on account of Defendant's filing of the Opposition. Plaintiff alleges the Opposition and its contents solely as evidence of Defendant's knowledge of Plaintiff and of Plaintiff's rights, of the existence of an actual and justiciable controversy between the parties, and of the inconsistency between Defendant's litigation contentions and Defendant's conduct in the marketplace.

**I. Defendant's Infringement Is Knowing, Deliberate, and Willful**

87. Defendant had actual knowledge of Plaintiff's prior rights in the CINNIES Mark no later than June 9, 2025, when Defendant received Plaintiff's written notice identifying those rights.

88. Defendant did not respond to that communication or to Plaintiff's follow-up, and Defendant did not cease, limit, or modify its use of the Infringing Designation in any respect.

89. Instead, Defendant made the deliberate business decision to continue and to expand its infringing use, investing further capital in a designation it knew to be claimed by a senior user.

90. Defendant has at all times maintained that it is entitled to use the Infringing Designation notwithstanding Plaintiff's senior rights, and has never withdrawn, qualified, or narrowed that position.

91. Defendant's conduct is willful, intentional, and undertaken in bad faith with the intent to trade upon and appropriate the goodwill Plaintiff has built in the CINNIES

Mark. Defendant's conduct is oppressive, fraudulent, and malicious within the meaning of California Civil Code § 3294.

**J. Harm to Plaintiff**

92. Defendant's conduct has caused and continues to cause Plaintiff irreparable harm, including the loss of control over the reputation and goodwill associated with the CINNIES Mark, for which Plaintiff has no adequate remedy at law.

93. Defendant's goods and services are identical or highly similar to, and are offered through the same or overlapping channels of trade and to the same or overlapping classes of consumers as, those offered by Plaintiff under the CINNIES Mark.

94. Defendant's designation is not merely similar to Plaintiff's CINNIES Mark — it is identical. The wholesale adoption of an identical mark for identical or closely related goods and services, rather than a similar but distinct mark, is not attributable to coincidence and supports the inference that Defendant deliberately copied Plaintiff's mark with knowledge of Plaintiff's rights and with the intent to trade on the goodwill Plaintiff has developed in the CINNIES Mark.

95. On information and belief, Defendant's continued use of the identical CINNIES designation after receiving actual notice of Plaintiff's rights was, and is, deliberate, intentional, and undertaken in conscious disregard of Plaintiff's known rights.

96. Defendant's use of a designation identical to the CINNIES Mark, its continued use after receiving actual written notice of Plaintiff's rights and an explicit demand to cease, and its failure to respond to that demand by discontinuing use, together demonstrate that Defendant's infringement has been and continues to be willful, deliberate, and in bad faith, undertaken with full knowledge of Plaintiff's rights in the CINNIES Mark

and with the intent to trade upon and misappropriate Plaintiff's goodwill and to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of Defendant's goods and services.

97. Plaintiff has been, and continues to be, irreparably harmed by Defendant's willful infringement, including through loss of control over the reputation and goodwill associated with the CINNIES Mark, for which Plaintiff has no adequate remedy at law.

98. As the senior user, Plaintiff is entitled to control the nature, quality, and presentation of the goods that reach consumers under the CINNIES Mark. Defendant's use deprives Plaintiff of that control, and Plaintiff can neither inspect, approve, nor influence the goods that consumers encounter bearing the wording CINNIES.

99. Plaintiff is likewise deprived of control over the commercial associations attached to the CINNIES Mark. Defendant has entered into collaborations with brands, restaurants, celebrities, and influencers that Plaintiff did not select, vet, or approve, and Plaintiff has no ability to prevent Defendant from associating the wording CINNIES with persons or businesses with which Plaintiff would decline to be associated.

100. Defendant's use impairs Plaintiff's ability to grow its existing California business and to expand its physical and wholesale presence under the CINNIES Mark into California, including the Los Angeles market. Plaintiff already sells and ships goods bearing the CINNIES Mark to California consumers, and California is a natural zone of Plaintiff's further expansion.

101. Defendant's continued use inflicts a further and compounding injury that cannot be remedied by monetary relief alone. Each additional month in which Defendant markets cinnamon rolls under the wording CINNIES threatens to erode the capacity of the

CINNIES Mark to identify a single source — the very capacity Defendant disputes in the Opposition. Defendant is thereby working to create the marketplace conditions on which its own contentions depend, and the injury to Plaintiff's rights increases with each day the conduct continues.

102. Upon a finding of a violation of 15 U.S.C. § 1125(a), Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a).

103. Unless enjoined, Defendant will continue and further expand its infringing use, and Plaintiff will continue to suffer damage to its business, reputation, and goodwill.

**FIRST CLAIM FOR RELIEF**
**Federal Trademark Infringement**
**(15 U.S.C. § 1125(a)(1)(A))**

104. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

105. Plaintiff owns valid and protectable common law rights in the CINNIES Mark and in the CINNY Mark, arising from its continuous use of those marks in interstate commerce since December 12, 2022 and September 30, 2022 respectively, each of which predates any use of the Infringing Designation by Defendant. Federal registration is not a prerequisite to relief under 15 U.S.C. § 1125(a).

106. Defendant has used and continues to use the Infringing Designation in interstate commerce, in connection with goods and services that are identical or closely related to Plaintiff's goods.

107. Defendant's use of the Infringing Designation is likely to cause confusion, mistake, or deception among consumers as to the source of Defendant's goods and services.

108. Defendant's use of the Infringing Designation is without Plaintiff's consent, license, or authorization.

109. Defendant's conduct constitutes trademark infringement, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

110. Defendant's infringement has been knowing, deliberate, and willful. Defendant received actual written notice of Plaintiff's senior rights on or about June 9, 2025, and thereafter continued and materially expanded its infringing use for more than one year and further sought to prevent Plaintiff from registering its own senior mark.

111. Defendant's willful conduct, as alleged above, renders this an "exceptional case" within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiff to recover Defendant's profits attributable to the infringement, Plaintiff's actual damages, enhanced damages, and Plaintiff's reasonable attorneys' fees and costs of this action.

112. Plaintiff has been and will continue to be damaged by Defendant's conduct in an amount to be proven at trial, and is entitled to Defendant's profits, Plaintiff's actual damages, enhanced or treble damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), and to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## SECOND CLAIM FOR RELIEF
### False Designation of Origin and Unfair Competition
### (15 U.S.C. § 1125(a)(1)(A))

113. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

114. Defendant has used the Infringing Designation in interstate commerce, in connection with goods and services, in a manner constituting false designation of origin and a false or misleading representation of fact.

115. Defendant's use of the Infringing Designation is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with

Plaintiff, and as to the origin, sponsorship, or approval of Defendant's goods and services by Plaintiff.

116. Defendant's conduct is likely to cause consumers to believe, incorrectly, that Defendant's goods and services originate with Plaintiff, or that Defendant is affiliated with, sponsored by, or endorsed by Plaintiff.

117. Defendant's conduct constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

118. Defendant's willful conduct, as alleged above, renders this an "exceptional case" within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiff to recover Defendant's profits attributable to the infringement, Plaintiff's actual damages, enhanced damages, and Plaintiff's reasonable attorneys' fees and costs of this action.

119. Plaintiff has been and will continue to be damaged by Defendant's conduct in an amount to be proven at trial, and is entitled to Defendant's profits, Plaintiff's actual damages, enhanced or treble damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), and to injunctive relief pursuant to 15 U.S.C. § 1116(a).

**<u>THIRD CLAIM FOR RELIEF</u>**
**Federal Trademark Infringement of a Registered Mark**
**(15 U.S.C. § 1114(1))**

120. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

121. Plaintiff is the owner of United States Trademark Registration No. 7635253 for the CINNY ROLLS Mark on the Principal Register for "bakery goods; bakery products" in International Class 30. The CINNY ROLLS Registration is valid, subsisting, and in full force and effect.

122. The CINNY ROLLS Registration constitutes prima facie evidence of the validity of the CINNY ROLLS Mark, of Plaintiff's ownership of the CINNY ROLLS Mark, and of Plaintiff's exclusive right to use the CINNY ROLLS Mark in commerce in connection with the goods identified therein, pursuant to 15 U.S.C. §§ 1057(b) and 1115(a).

123. Plaintiff's right of priority in the CINNY ROLLS Mark extends nationwide as of April 7, 2023, the filing date of the application that matured into the CINNY ROLLS Registration, pursuant to 15 U.S.C. § 1057(c). That date precedes Defendant's adoption and first use of the Infringing Designation.

124. The word ROLLS is disclaimed apart from the CINNY ROLLS Registration as shown. The word CINNY is the dominant and source-identifying element of the CINNY ROLLS Mark. The word CINNIE is phonetically identical to CINNY and differs from it only in spelling.

125. Defendant has used and continues to use the Infringing Designation in commerce, in connection with the sale, offering for sale, distribution, and advertising of cinnamon rolls, which are bakery goods and bakery products within the identification of goods of the CINNY ROLLS Registration.

126. The Infringing Designation is a reproduction, copy, and colorable imitation of the CINNY ROLLS Mark within the meaning of 15 U.S.C. § 1114(1).

127. Defendant's use of the Infringing Designation is likely to cause confusion, to cause mistake, and to deceive as to the source of Defendant's goods.

128. Defendant's use of the Infringing Designation is without the consent of Plaintiff.

129. Defendant's conduct constitutes infringement of a federally registered mark in violation of 15 U.S.C. § 1114(1).

130. Defendant has had actual notice of the CINNY ROLLS Registration since at least the filing and service of this Complaint. Defendant's infringement has been knowing, deliberate, and willful, and this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

131. Plaintiff has been and will continue to be damaged by Defendant's conduct in an amount to be proven at trial, and is entitled to Defendant's profits, Plaintiff's damages, enhanced or treble damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), to injunctive relief pursuant to 15 U.S.C. § 1116(a), and to destruction of infringing materials pursuant to 15 U.S.C. § 1118.

## FOURTH CLAIM FOR RELIEF
**Common Law Trademark Infringement**
**(California Common Law)**

132. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

133. Plaintiff owns valid and protectable common law rights in the CINNIES Mark and in the CINNY Mark in California and elsewhere, arising from its good faith adoption and use of those marks in commerce prior to any use of the Infringing Designation by Defendant. Those rights are expressly preserved by California Business and Professions Code § 14259, which provides that nothing in California's Model State Trademark Law adversely affects the rights or the enforcement of rights in marks acquired in good faith at any time within common law.

134. Plaintiff is the senior user of the CINNIES Mark and of the CINNY Mark. Plaintiff's adoption and use of each mark predates Defendant's first use of the Infringing Designation by more than two years.

135. Defendant has used and continues to use the Infringing Designation in connection with goods and services that are identical or closely related to the goods Plaintiff offers under the CINNIES Mark.

136. Defendant's use of the Infringing Designation is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of Defendant's goods and services.

137. Defendant's conduct constitutes infringement of Plaintiff's common law rights in the CINNIES Mark and in the CINNY Mark.

138. Defendant's conduct was and is willful, oppressive, fraudulent, and malicious within the meaning of California Civil Code § 3294, entitling Plaintiff to exemplary damages in addition to its actual damages.

139. Plaintiff has been damaged thereby in an amount to be proven at trial and is entitled to damages and injunctive relief.

## FIFTH CLAIM FOR RELIEF
**Common Law Unfair Competition**
**(California Common Law)**

140. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

141. Plaintiff has built substantial goodwill in the CINNIES Mark, the CINNY ROLLS Mark, and the CINNY Mark through its use of those marks in commerce, its sales of goods under them, and the unsolicited media attention its goods sold under them have received. That goodwill is a single body of goodwill owned by Plaintiff.

142. By adopting and using the Infringing Designation for identical and closely related goods, Defendant has passed off and continues to pass off its goods and services as those of Plaintiff, or as goods and services affiliated with, sponsored by, or approved by Plaintiff.

143. Defendant adopted the Infringing Designation with knowledge, or with reason to know, of Plaintiff and Plaintiff's use of the CINNIES Mark, and continued that use after receiving written notice of Plaintiff's senior rights on or about June 9, 2025. Rather than cease, Defendant expanded its use into new locations, new trade channels, and new consumer audiences.

144. Defendant's conduct constitutes passing off and unfair competition under the common law of the State of California, and has enabled Defendant to misappropriate for itself the goodwill Plaintiff has built in the CINNIES Mark.

145. Defendant's conduct was and is willful, oppressive, fraudulent, and malicious within the meaning of California Civil Code § 3294, entitling Plaintiff to exemplary damages in addition to its actual damages.

146. Plaintiff has been damaged thereby in an amount to be proven at trial and is entitled to damages and injunctive relief.

**SIXTH CLAIM FOR RELIEF**
**Declaratory Judgment**
**(28 U.S.C. §§ 2201–2202)**

147. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

148. An actual, substantial, and continuing controversy exists between Plaintiff and Defendant regarding their respective rights in the CINNIES Mark, as evidenced by

Defendant's continued use of the Infringing Designation following written notice and by the Opposition.

149. Plaintiff is entitled to a declaration that Plaintiff is the senior user and owner of the CINNIES Mark, the CINNY ROLLS Mark, and the CINNY Mark; that the CINNIES Mark is distinctive and protectable; that Plaintiff's rights in those marks are superior to any rights claimed by Defendant; and that Defendant has no right to use the Infringing Designation.

150. Plaintiff is further entitled to a declaration that Defendant's use of the Infringing Designation infringes Plaintiff's rights in the CINNIES Mark, in the CINNY ROLLS Mark, and in the CINNY Mark, and that Defendant lacks any right superior to Plaintiff's in the wording CINNIES, CINNIE, or CINNY.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

A. That Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, be permanently enjoined from:

(i) using CINNIES, CINNIE, CINNY, or any other designation confusingly similar to Plaintiff's CINNIES Mark, CINNY ROLLS Mark, or CINNY Mark, in connection with bakery goods, bakery products, frozen dough, or retail bakery store services;

(ii) representing, directly or by implication, that Defendant's goods or services are authorized by, sponsored by, endorsed by, or affiliated with Plaintiff;

(iii) using CINNIES, CINNIE, CINNY, or any confusingly similar designation in any domain name, subdomain, social media account name, handle, username, hashtag, or other online identifier; and

(iv) engaging in any other conduct likely to cause confusion as to the source, sponsorship, or affiliation of Defendant's goods or services;

B. That Defendant be ordered to disable, rename, or otherwise discontinue the use of any domain name, social media account, or username incorporating CINNIES, or an confusingly similar designation, including cinnies.co, @eatcinnies, and @eatcinniess;

C. That Defendant be ordered to deliver up for destruction all labels, signs, packaging, advertisements, promotional materials, and other items bearing the Infringing Designation, pursuant to 15 U.S.C. § 1118;

D. That Defendant be ordered to file with the Court and serve upon Plaintiff, within thirty (30) days after entry of the injunction, a written report under oath setting forth in detail the manner and form of its compliance, pursuant to 15 U.S.C. § 1116(a);

E. That Plaintiff be awarded Defendant's profits, Plaintiff's actual damages, and the costs of this action, pursuant to 15 U.S.C. § 1117(a);

F. That the Court enter judgment for up to three times Plaintiff's actual damages according to the circumstances of the case, in light of Defendant's willful conduct, pursuant to 15 U.S.C. § 1117(a);

G. That the Court find this to be an exceptional case and award Plaintiff its reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

H. That Plaintiff be awarded exemplary damages on its common law claims pursuant to California Civil Code § 3294;

I. That the Court declare that Plaintiff is the senior user and owner of the CINNIES Mark, the CINNY ROLLS Mark, and the CINNY Mark, that the CINNIES Mark is distinctive and protectable, and that Defendant's rights, if any, are junior and subordinate to Plaintiff's;

J. That Plaintiff be awarded pre-judgment and post-judgment interest; and

K. For such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 11, 2026

Respectfully submitted,

GOODY LAW GROUP

By: *<u>/s/ Greyson Goody</u>*
Greyson Goody, Esq.

*Attorneys for Plaintiff Hive Market Holdings LLC*